CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Antonio Fernandez**, <br><br> Plaintiff, <br><br> v. <br><br> **Wind Chime Properties, L.P.**, a California Limited Partnership; **White Spring Associates, Inc.**, a California Corporation; **Jimenez Brothers Enterprises, Inc.**, a California Corporation; and Does 1-10, <br><br> Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Antonio Fernandez complains of Wind Chime Properties, L.P., a California Limited Partnership; White Spring Associates, Inc., a California Corporation; Jimenez Brothers Enterprises, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is

Complaint

paralyzed from the waist down and uses a wheelchair for mobility.

2. Defendants Wind Chime Properties, L.P. and White Spring Associates, Inc. owned the real property located at or about 1670 Indian Hills, Pomona, California, in December 2018.

3. Defendant Wind Chime Properties, L.P. and White Spring Associates, Inc. own the real property located at or about 1670 Indian Hills, Pomona, California, currently.

4. Defendant Jimenez Brothers Enterprises, Inc. owned Jimenez Ranch Market located at or about 1670 Indian Hills, Pomona, California, in December 2018.

5. Defendant Jimenez Brothers Enterprises, Inc. owns Jimenez Ranch Market ("Market") located at or about 1670 Indian Hills, Pomona, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

Complaint

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Market in December 2018 to shop.

11. The Market is a facility open to the public, a place of public accommodation, and a business establishment.

12. Paths of travel are one of the facilities, privileges and advantages offered by Defendants to patrons of the Market.

13. Unfortunately, even though ambulatory customers at the Market can enter the business and immediately go through a turnstile to enter the sales floor, persons with disabilities are forced to travel to the other side of the Market to gain access to the sales floor.

14. This is frustrating for plaintiff because there is a swinging gate with an ADA placard on it that is located next to the turnstile. Unfortunately, the defendants keep the swinging gate locked. As a result, plaintiff is unable to enter the sales floor immediately upon entering the Market. On the day of plaintiff's visit, in fact, an employee unlocked the gate for the plaintiff so that he could easily enter the sales floor.

15. The defendants do not have a policy or practice of keeping the swinging gate unlocked for persons with disabilities.

16. One of the facilities, privileges or advantages enjoyed by customers at the Market is an electronic point of sale machine that has a display screen with

directions and information for the customer, a card reader to take credit cards and buttons to be pressed. This permits easy and private transaction opportunities to customers at the Market.

17. Unfortunately, the display screen is mounted so that it is not visible by a wheelchair user. The information on the display screen is not visible from a viewpoint 40 inches above the floor. Moreover, the display screen is angled away from the viewer by about 45 degrees and the center line of the display screen is located 46 inches above the floor.

18. On information and belief, plaintiff alleges that this point of sale machine was installed sometime after 1995 and is, therefore, subject to California Accessibility Standards in addition to ADA standards.

19. Another facility, privilege or advantage enjoyed by customers at the Market is a check writing surface located at the registers. This provides a convenient surface to write checks, sign receipts, place a wallet or other objects or anything else during a transaction.

20. Unfortunately, the check writing surface is located about 42 inches above the floor and is, therefore, not accessible to wheelchair users.

21. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

22. Ticket dispensers in the meat department are also one of the facilities, privileges and advantages offered by Defendants to patrons of the Market.

23. Meanwhile, there is a ticket dispenser placed on the counter of the meat department for patrons to take a serving number.

24. However, the ticket dispenser is located about 56 inches above the finish floor. Additionally, there is an obstruction in front of the counter in the meat department. The defendants place soda in front of the meat counter, which made it even more difficult to reach up to the ticket dispenser. Finally,

Complaint

the glass area of the counter bows outward, which also serves as an obstruction for plaintiff.

25. Plaintiff personally encountered these barriers.

26. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

27. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Market.

28. Even though the plaintiff did not personally confront the barriers in the restroom, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor. In fact, the restroom mirror is about 57 inches high.

29. The grab bars are 38 inches above the floor and beyond the maximum height permitted.

30. The plumbing underneath the sink is not wrapped to protect against burning contact.

31. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

32. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

33. The mirror could be lowered at little to no cost.

34. Insulation can be installed under the sink at a cost of no more than $25.

35. The swinging gate at the entrance of the Market could be left unlocked.

36. Plaintiff will return to the Market to avail himself of their goods or

Complaint

services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

37. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

38. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

39. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or

Complaint

      accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

  c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

40. Where a clear floor or ground space allows a parallel approach to an element and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum and the depth of the obstruction shall be 24 inches maximum. The high side reach shall be 48 inches maximum for a reach depth of 10 inches maximum. Where the reach depth exceeds 10 inches, the high side reach shall be 46 inches maximum for a reach of 24 inches maximum. 2010 Standards § 308.3.2.

41. Here, the meat department ticket dispenser was in excess of the heights allowed by law.

42. Under the ADA, when a place of public accommodation offers a facility, privilege, or advantage to its customers, it must offer full and equal enjoyment of the same to persons with disabilities. 42 USC 12182(a).

43. Here, the electronic point of sale machine made available to customers

Complaint

is a distinct facility, privilege or advantage and, therefore, must be accessible to persons with disabilities also.

44. While there is no explicit access standard for "point of sale machines," the most analogous standard for display screens on such devices is found at section 707.7.1 of the 2010 Standards. Under that standard, the display screen must be visible from a viewpoint 40 inches above the floor. The California Building Code (CBC) is more explicit, directly addressing point of sale machines.

45. Since the 1995 version of the CBC—and continuing to this date—point of sales machines were required to be accessible to persons with disabilities. Under the CBC, where point of sale machines are provided at the accessible check stands, sales or service counters, the display screen must be visible from a viewpoint 40 inches above the floor. If the display screen is mounted vertically (or tipped away from the viewer less than 30 degrees) the center line of the display screen shall not be more than 52 inches above the floor. 11B-707.7.1.1. If the display screen is angled or tipped away from the viewer by more than 30 degrees but less than 60 degrees, then the center line of the display screen shall not be more than 44 inches above the floor. 11B-707.7.1.2. Finally, if the display screen is mounted horizontally (or tipped away from the viewer by more 60 degrees) then then the center line of the display screen shall not be more than 34 inches above the floor. This has been the accessibility standard in all versions of the CBC since 1995.

46. In the 1995 CBC, that standard as found at section 3105A(g)5. In the 1998 through 2013 versions of the CBC, that standard was found at section 1117B.7.5. Currently, that standard is found at section 11B-707.7.1.

47. By failing to provide an accessible point of sale machine, the defendants have violated the law.

48. Under the ADA, when a place of public accommodation offers a facility,

Complaint

privilege, or advantage to its customers, it must offer full and equal enjoyment of the same to persons with disabilities. 42 USC 12182(a).

49. Here, the check writing surface at the Market made available to customers is a distinct facility, privilege or advantage and, therefore, must be accessible to persons with disabilities also. Under the ADA Standards, check writing surfaces—which constitute "work surfaces"—whether located at check-out aisles or at sales counters must be located between 28 inches and 34 inches above the floor. See 2010 Standards 902.3, 904.3.3.

50. Here, by failing to provide an accessible check-writing surface, the defendants have violated the law.

51. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 2010 Standards § 603.3.

52. Here, the mirror is mounted higher than the maximum permitted and is a violation of the ADA.

53. Grab bars at the toilet must be mounted between 33 and 36 inches in height. 2010 Standards § 609.4.

54. Here, the failure to ensure that the grab bars were mounted within the range required by the ADA is a violation of the law.

55. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 2010 Standards §606.5.

56. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

57. Accessible routes shall coincide with or be located in the same area as general circulation paths. Where the circulation paths are interior, required accessible routes shall also be interior. 2010 Standards §206.3.

58. Here, even though ambulatory customers can immediately enter the sales floor upon entering the Market, persons with disabilities who are in wheelchairs are not able to do so because the defendants keep the swinging

Complaint

gate located next to the turnstile locked.

59. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

60. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

61. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

62. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

63. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

64. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

65. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each

Complaint

responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: December 18, 2018     CENTER FOR DISABILITY ACCESS

By: _____
Chris Carson, Esq.
Attorney for plaintiff